IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JEFFREY RENE LOPEZ,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

Civil Case 2:23-CV-127-Z
(Criminal Case 2:20-CR-115-Z-BR-1)

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C.
Section 2255 ("Motion") (ECF No. 2) filed by Petitioner Jeffrey Rene Lopez ("Lopez"). Having
considered the Motion, the response, the record, and applicable authorities, the Court hereby
**DENIES** the Motion for the reasons stated below.

### BACKGROUND

The record in Lopez's underlying criminal case, No. 2:20-CR-115-Z-BR ("CR"), reflects
the following:

On November 3, 2020, Lopez was named in a criminal complaint charging him with
distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C.
Sections 841(a)(1) and 841(b)(1)(C). *See* CR ECF No. 1. On November 19, 2020, Lopez was
named in a four-count indictment charging him in Count One with distribution and possession
with intent to distribute methamphetamine, in violation of 21 U.S.C. Sections 841(a)(1) and
841(b)(1)(A)(C); in Count Two with possession with intent to distribute 500 grams and more of
methamphetamine in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A)(viii); in Count

Three with being a convicted felon in possession of firearms, in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2); and in Count Four with possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. Sections 924(c)(1)(A) and 924(c)(1)(A)(i). CR ECF No. 15. Lopez entered a plea of not guilty on December 4, 2020. CR ECF No. 27. On April 28, 2021, after a two-day jury trial, Lopez was found guilty on all counts. CR ECF No. 65.

The probation officer then prepared a presentence report ("PSR"), which reflected that Lopez's adjusted offense level was 38. CR ECF No. 78-1 ¶ 38. His sentencing guideline range for Counts One through Three was 262–327 months. *Id.* ¶ 92. The guideline range for Count Four, to run consecutively to the other counts, was 60 months, which is the minimum required by statute. *Id.* The Court sentenced Lopez to a term of imprisonment of 425 months, followed by five years of supervised release. The sentence consisted of 240 months as to Count One; 365 months as to Count Two (of which 240 months run concurrently with Count One and 120 months run concurrently with Count Three); 120 months as to Count Three (which runs concurrently with Counts One and Two); and 60 months as to Count Four (which runs consecutively to Counts One-Four). CR ECF No. 91. Lopez filed a direct appeal, and the judgment of this Court was affirmed on September 16, 2022. CR ECF No. 117. He timely filed this Motion on July 25, 2023. CR ECF No. 123.

### GROUNDS FOR THE MOTION

Lopez asserts the following grounds in support of the Motion, all based on alleged ineffective assistance of counsel. He alleges that:

(1) trial counsel failed to investigate the existence of a ping warrant for Lopez's cell phone;

(2) trial counsel failed to investigate whether Lopez was involved in a September 2020 drug purchase transaction;

2

(3) trial counsel failed to challenge Officer Kris Koval's testimony under the Confrontation Clause;

(4) trial counsel failed to contest the admissibility of audio recordings and transcripts on Confrontation Clause grounds;

(5) trial counsel failed to contest allegedly perjured testimony by Koval about a video of an October 2020 drug purchase transaction;

(6) trial counsel failed to impeach portions of Koval's testimony;

(7) trial counsel opened the door to damaging hearsay evidence during voir dire and cross examination of Koval;

(8) trial counsel failed to investigate grounds to suppress text-message evidence;

(9) appellate counsel was ineffective for failing to raise the issues listed above; and

(10) Lopez is entitled to relief under the cumulative-error doctrine.

### STANDARD OF REVIEW

#### A.    Section 2255.

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164–165 (1982); *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (same). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal

3

and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978)).

Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Hughes*, 635 F.2d at 451. A prisoner is not entitled to an evidentiary hearing unless he or she "presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). The Court has reviewed the record and concluded that an evidentiary hearing is not necessary because the record categorically refutes Lopez's claims, as set forth below.

**B.     Ineffective assistance of counsel.**

To prevail on an ineffective assistance of counsel claim, the movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong

4

or the prejudice prong will defeat a claim for ineffective assistance of counsel.").

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

ANALYSIS

The Court evaluates each of Lopez's allegations in turn:

A.    **Failure to investigate the existence of a ping warrant for Lopez's cell phone.**

Lopez first alleges that his trial counsel was ineffective for failing to investigate whether police had a ping warrant for the location data for cell phone number (626) 723-8804, which Lopez admits was his cell phone number. ECF Nos. 2-1 at 4–11, 45–50; 2-2 at 5. Lopez claims that there was no warrant and, therefore, all evidence originating from the phone's location data should have been excluded. ECF No. 2-1 at 4–11. In support of his argument, Lopez provides a letter from the court clerk's office, which states that the clerk's office "has no record of any case with the information you provided." ECF No. 2-2 at 15. However, the mere fact that the clerk could not locate the requested case or information does not mean that the warrant never existed.

5

In response to the Motion, the government provided a copy of the ping warrant. *See* ECF No. 11. Even if counsel's conduct had been deficient as alleged, Lopez still must show a reasonable probability that the outcome of the proceedings would have been different had counsel investigated the existence of the ping warrant — *i.e.*, that the jury would have found him not guilty. *Strickland*, 466 U.S. at 694; *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012). Because there was a ping warrant, Lopez cannot show that counsel's alleged failure to investigate its existence prejudiced him at trial. Lopez is not entitled to relief on this basis.

**B.     Failure to investigate whether Lopez was involved in September 2020 transaction.**

Lopez alleges that counsel was ineffective for failing to investigate whether he was involved in a September 2020 drug purchase transaction between a confidential informant and an individual named Mark Hefley ("Hefley"). ECF No. 2-1 at 37–45. Defense counsel must engage in a reasonable amount of pretrial investigation and "at a minimum, . . . make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). There are no strict rules for counsel's conduct, however, beyond the general requirement of reasonableness. *See Trottie v. Stephens*, 720 F.3d 231, 242 (5th Cir. 2013).

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Talamini*, No. 4:13-CV-012, 2013 WL 1197926 at *3 (N.D. Tex. Mar. 25, 2013) ("Movant does not identify any further information that counsel could have uncovered that would have favorably changed the outcome of his case."). Lopez does not allege what, if anything, an investigation could have discovered that would have changed the outcome of his case, especially since Lopez was not charged in connection with the September 2020 transaction. *See* ECF No. 2-1 at 37–45.

6

Lopez alleges that counsel failed to call him as a witness to ask if he supplied Hefley with drugs, and whether he met with Hefley on or about September 2, 2020 (the date of the transaction involving Hefley). *Id.* at 39–40. Lopez states that he would have testified that he did not either meet Hefley or supply him with drugs; as a result, the jury would have realized that the officers who testified against him were lying. *Id.* at 40.

The foregoing does not show that counsel's failure to call Lopez as a witness was deficient. Had Lopez testified, he would have been subject to likely damaging cross-examination about the day of September 2, 2020, involving the facts that (1) his phone number was in Hefley's call log; (2) Hefley was seen meeting with someone driving the same type of Nissan that Lopez drove; (3) the Nissan was seen traveling to Lopez's brother's house; and (4) a male in Lopez's age range exited the Nissan and entered the house. CR ECF No. 102 at 35–38. *See United States v. Araujo,* 77 Fed. App'x 276, 279 (5th Cir. 2003) ("…aspects of [movant's] testimony appear incredible and would have been subject to vigorous and, in all likelihood damaging cross examination" so no *Strickland* prejudice found by denying the right to testify). Further, given the additional evidence introduced against him (*e.g.,* the evidence obtained during execution of search warrants, the search of Lopez's car after his arrest, and his confession), Lopez has not shown that counsel's failure to call him as a witness was anything other than sound trial strategy, nor has he shown that such failure prejudiced him under *Strickland.* Lopez is not entitled to relief on this basis.

**C.    Failure to challenge testimony under the Confrontation Clause.**

Lopez next alleges that trial counsel was ineffective for failing to object to certain portions of testimony from Amarillo Police Officer and DEA task force member Kris Koval ("Koval"). Lopez contends that his testimony violated the Confrontation Clause because it included testimonial hearsay statements from a confidential informant. *See* ECF No. 2-1 at 11–22.

7

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI, cl. 2. "[T]his bedrock procedural guarantee" protects against convictions based on out-of-court accusations that the defendant cannot test "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 42, 61 (2004). The Supreme Court explained in *Crawford* that the confrontation right bars the introduction of "testimonial statements" of a witness who does not appear at trial "unless he [is] unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *Id.* at 53–54. This rule, however, applies only to statements offered to prove the truth of the matter asserted. *Dorsey v. Stephens*, 720 F.3d 309, 317 (5th Cir. 2013).

At the outset, the Court notes that "evidentiary and constitutional analyses are two separate and distinct conclusions." *United States v. Jackson,* 636 F.3d 687, 690 (5th Cir. 2011); *see also United States v. Ayelotan*, 917 F.3d 394 (5th Cir. 2019) (conducting separate analyses for admissibility of documentary evidence under the Federal Rules of Evidence and under the Confrontation Clause); *United States v. Ceballos*, 789 F.3d 607, 616 (5th Cir. 2015) (noting that the Supreme Court in *Crawford* "rejected the notion that 'the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence.'" (quoting *Crawford*, 541 U.S. at 61)). Simply because a statement is admissible under the Federal Rules of Evidence does not render it automatically proper under the Confrontation Clause. The question before the Court in this case is not whether out-of-court statements by the confidential informant were admissible under the Federal Rules of Evidence, but whether they violated the Confrontation Clause even if they were admissible under the Federal Rules of Evidence.

8

In general, testifying officers such as Koval may refer to out-of-court statements to "provide context for their investigation or explain 'background' facts," so long as the "out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions." *United States v. Jones*, 930 F.3d 366 (5th Cir. 2019) (quoting *United States v. Kizzee*, 877 F.3d 650, 659 (5th Cir. 2017)); *see also Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008) ("Police officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course of their investigation, when those statements inculpate the defendant. When the statement from an out-of-court witness is offered for its truth, constitutional error can arise. This principle is well established."). The Fifth Circuit Court of Appeals has made it clear that "[w]hen such evidence comes into play, the prosecution must be circumspect in its use, and the trial court must be vigilant in preventing its abuse." *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991); *see also United States v. Sosa*, 897 F.3d 615, 623 (5th Cir. 2018) ("[C]ourts must be vigilant in ensuring that these attempts to 'explain the officer's actions' with out-of-court statements do not allow the backdoor introduction of highly inculpatory statements that the jury may also consider for their truth." (quoting *Kizzee*, 877 F.3d at 659)).

Statements from a testifying officer that exceed "the limited need to explain an officer's actions can violate the Sixth Amendment — where a nontestifying witness specifically links a defendant to the crime, testimony becomes inadmissible hearsay." *Jones*, 930 F.3d at 377 (quoting *Kizzee*, 877 F.3d at 659). As the Fifth Circuit set forth in *United States v. Hamann*:

> We ask three questions to determine whether admitted evidence violated the Confrontation Clause: First, did the evidence introduce a testimonial statement by a nontestifying witness? Second, was any such statement offered to prove the truth of the matter asserted? Third, was the nontestifying witness available to testify, or was the defendant deprived of an opportunity to cross-examine him? If the answer to each of those questions is "yes," the Confrontation Clause was violated.

33 F.4th 759, 767 (5th Cir. 2022) (citing *Kizzee*, 877 F.3d at 656–61). The Court will address each element herein.

### 1.    Element One: testimonial statements by a nontestifying witness.

Pursuant to *Hamann*, the first question before the Court is whether the evidence introduced a testimonial statement by a nontestifying witness. "A statement is testimonial if its 'primary purpose is to establish or prove past events potentially relevant to later criminal prosecution'" rather than to seek police assistance with an ongoing emergency. *Hamann*, 33 F.4th at 767 (quoting *Kizzee*, 877 F.3d at 656); *see also Ayelotan,* 917 F.3d at 402 (same). Under the "primary purpose" test, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). By contrast, statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Courts must look at the totality of the circumstances to determine the primary purpose of a statement. *Michigan v. Bryant*, 562 U.S. 344 (2011).[1] In short, "[w]hen a witness's statements at trial implicate a nontestifying declarant's statements, the content is testimonial if it leads 'to the clear and logical inference' that the declarant believed that the defendant committed the charged offense." *Hamann*, 33 F.4th at

---

[1] The Fifth Circuit looks at several factors set forth by the Supreme Court in determining whether the "primary purpose" was to create an out-of-court substitute for trial testimony: (1) whether the declarant "was speaking about events as they were actually happening, rather than 'describ[ing] past events,' " *Davis*, 547 U.S. at 827; (2) whether a reasonable person in the declarant's position would have believed that the declarant was facing an ongoing emergency, *see id.; see also Bryant*, 562 U.S. at n. 8; (3) whether "the nature of what was asked and answered," viewed objectively, "was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn ... what had happened in the past," *Davis*, 547 U.S. at 827, and (4) the level of formality of the interrogation. *Id. See United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012).

767 (quoting *Kizzee*, 877 F.3d at 658).

The Court has reviewed Lopez's alleged Confrontation Clause violations cited in the Motion.[2] Several of the trial transcript excerpts cited by Lopez are nontestimonial in nature and solely provide context for the officers' investigation or explain background facts. *Jones*, 930 F.3d at 377. *See* CR ECF No. 102 at 38:1–6; 43:23–25; 44:1–3; 54:10–21; 71:1–7. Other statements cited by Lopez do not recount any out-of-court statements that are objectionable on Confrontation Clause grounds. *Id.* at 35:3–25; 36:5–21; 41:16–20; 68:5–9; 71:13–24. Others are proper testimony to which no objection was warranted, or an objection by Lopez's counsel was sustained. *Id.* at 37:4–11; 38:7–20; 42:5–9; 52:23–25; 53:7–25; 54:1–2; 69:1–10; 70:11–15; 75:2–11; 79:1–12.

Relevant to Lopez's arguments are the following statements by Koval:

1.  That a confidential informant "volunteered to … conduct controlled purchases of methamphetamine from Lopez to assist us with the investigation." *Id.* at 42:1–4.

2.  That the informant had "purchased methamphetamine from Lopez before." *Id.* at 42:16–23.

3.  That the sole indicated basis for Koval's ability to identify Lopez's voice on Exhibit 4 (an audio recording) is that the informant told Koval he was calling Lopez. *Id.* at 43:4–22; 44:4–20.

4.  Law enforcement chose to arrest Lopez during his drive from California to Amarillo because they "had received information from an informant that Mr. Lopez was bringing back a quantity of methamphetamine." *Id.* at 78:20–25.

Regarding Koval's testimony about Exhibit 4, the audio recording in which the confidential informant called to set up a drug purchase, there appears to be no evidence in the record (absent

---

[2] Lopez also cites to the "Entire Master Docket Sheet, entire trial transcripts, and all appellate briefs" in support of his arguments. *See, e.g.*, ECF No. 2-1 at 19. While the Court has conducted a thorough review of the record, it is Lopez, not the Court, who must find evidentiary support for his allegations. *See Perez v. Johnson*, 122 F.3d 1067, 1997 WL 464599, at *1 (5th Cir. 1997) ("[The Fifth Circuit does] not require courts to scour the record for factual issues that might support a *pro se* litigant's position; it is that litigant's obligation to direct the court's attention to the relevant evidence."); *Yoo v. United States*, No. 6:21-cv-415, 2023 WL 4401623, at *11 (E.D. Tex. May 16, 2023) (same).

the confidential informant's out-of-court testimony) indicating a basis for Koval's identification of Lopez's voice. Koval testified that the audio recording was "a recorded phone call between Mr. Lopez and the informant" and that he recognized the voices in the recording as belonging to Lopez and the informant, although the sole testimony showing the basis for his identification of Lopez was the informant's representation to Koval that the informant was calling Lopez. *Id.* at 43:7–19; 44:4–20. Koval also testified that the informant called a number that was different than the number agents had for Lopez. *Id.* at 43:20–22. There is no indication in the record that Koval independently knew that the number belonged to Lopez, or that Koval had any other experience with Lopez such that he would recognize Lopez's voice.[3] *Id.* at 43:7–22. Koval further testified that there were other males in Lopez's house at the time of the call who "could have been involved in the conversation . . . ." *Id.* at 49:11–17. Koval's identification of Lopez on Exhibit 4 was testimonial in nature because there was no basis for such identification other than the confidential informant's statement. Although Lopez's counsel conducted a *voir dire* examination of Koval on the issues of foundation and identification for Exhibit 4, he did not object to admission of the audio recording on Confrontation Clause grounds or otherwise.[4] *See id.* at 45–50.

Regarding the statement that officers chose to arrest Lopez in his car returning to Amarillo because they "had received information from an informant that Mr. Lopez was bringing back a quantity of methamphetamine," the Fifth Circuit uniformly holds that similar statements are

---

[3] While Koval independently could have become familiar with Lopez's voice for authentication purposes under FED. R. EVID. 901(b)(5) after the conversation, he did not testify that he did so. On voir dire as to the authenticity of Exhibit 4, he claimed to be able to identify "whoever was inside the house performing the transaction" because he saw Lopez "engage with" the confidential informant on an unadmitted videotape that corresponded with Exhibit 4. CR ECF No. 102 at 49:14–17. However, nowhere in his testimony did he relate how he recognized Lopez's voice on Exhibit 4, other than that the confidential informant told him that the number he was calling was Lopez's number. *See* CR ECF No. 102 at 42:14–22; 44:17–20.

[4] Trial counsel did, however, object to a written transcript of the audio recording on authentication grounds. *See* CR ECF No. 102 at 51:8–25.

inadmissible hearsay that violates a defendant's constitutional rights. *See Taylor*, 545 F.3d at 336 (holding that movant was entitled to habeas relief because officer's testimony that an informant identified the defendant as "the perpetrator" violated the Confrontation Clause and movant was prejudiced under *Strickland*); *United States v. Hernandez*, 750 F.2d 1256, 1257–58 (5th Cir. 1985) (inadmissible hearsay mandating reversal of conviction when DEA agent testified that "[w]e received a referral by the U.S. Customs as [defendant] being a drug smuggler"); *United States v. Sharp*, 6 F.4th 573, 582 (5th Cir. 2021) (officer's testimony that "an eyewitness told me that the defendant was the shooter" violated Confrontation Clause.). Testimony about a tip becomes inadmissible hearsay if the testimony at trial "also points directly at the defendant and his guilt in the crime charged." *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991).[5]

As to the first two statements listed above, the fact that Lopez has not pointed out a specific, identifiable statement by the confidential informant within Koval's testimony is irrelevant. *Hamann*, 33 F.4th at 768. "The question is not whether [the movant] can identify a particular statement made by a nontestifying declarant, but whether the officer's testimony 'allows a fact-finder to infer the statements made to him.'" *Id.* (quoting *Kizzee*, 877 F.3d at 657). Each of the above testimonial excerpts from Koval leads to the "clear and logical inference" that the informant believed that Lopez committed the charged offense of possession of methamphetamine with intent to distribute. *See Hamann*, 33 F.4th at 767.

---

[5] Conversely, when the officer does not specifically link the defendant to the crime, testimony about a tip is admissible and thus does not implicate the Confrontation Clause. *See, e.g., United States v. Vitale*, 596 F.2d 688, 689 (5th Cir. 1979) (explaining that testimony regarding a tip is permissible "provided that it is simply background information showing the police officers did not act without reason and, in addition, that it does not point specifically to the defendant"); *United States v. Hernandez*, 441 F.2d 157 (5th Cir. 1971) (testimony admissible when officer testifies about a tip as to a specific vehicle that would be used to smuggle heroin into the United States, including the make, model, color and license plate number – but not the defendant).

## 2. Element Two: offered to prove the truth of the matter asserted.

The government argues that the statements at issue were offered solely to provide background information to explain the officers' actions. However, even if the evidence is relevant to explain the government's investigative actions, the evidence still is offered for the truth of the matter asserted if it "specifically links a defendant to the crime." *Jones*, 930 F.3d at 377. Evidence is "inadmissible hearsay if it . . . points directly at the defendant and his guilt." *Hamann*, 33 F.4th at 770 (quoting *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991)). As the *Hamann* court noted, the government may not introduce "highly inculpatory out-of-court statements" and call them nonhearsay "context" because their value for that purpose "pales in comparison to the risk that the jury will consider them for the truth of the matters asserted." *Hamann*, 33 F.4th at 770 (quoting *Sharp*, 6 F.4th at 582). Each of the statements recounted above "points directly at the defendant and his guilt" of distributing methamphetamine. *Hamann*, 33 F.4th at 770. The Court answers the second *Hamann* question in the affirmative: the above-referenced statements were offered for the truth of the matters asserted.

## 3. Element Three: availability of the nontestifying declarant.

The government still may introduce testimonial evidence from a nontestifying declarant when both (1) the declarant is unavailable to testify and (2) the defendant already had an opportunity to cross-examine the declarant. *Hamann*, 33 F.4th at 771; *Kizzee*, 877 F.3d at 660; *Crawford*, 541 U.S. at 53–54. A declarant is considered unavailable when the government fails to procure him after a good faith, reasonable effort. *United States v. Tirado-Tirado*, 563 F.3d 117, 123 (5th Cir. 2009). A defendant has had an opportunity to cross-examine a declarant when he has confronted the declarant "under circumstances closely approximating those that surround the typical trial," such as testimony given "under oath" and while the defendant is "represented by

14

counsel." *California v. Green*, 399 U.S. 149, 165 (1970).

There is no indication that Lopez had an opportunity to cross-examine the confidential informant. The government also did not show that the confidential informant was unavailable. Accordingly, Lopez has established that Koval's testimony in the statements set forth above violated the Confrontation Clause.

### 4. Harmless error.

Once the defendant shows a Confrontation Clause violation, the burden shifts to the government to prove that "there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008) (quoting *Chapman*, 386 U.S. at 24). Notably, the question is not whether the government has proven its case even without use of the tainted evidence, as the government argues here; instead, the question is whether the evidence "directly inculpated the defendant in a contested element of the offense." *Hamann*, 33 F.4th at 772 (quoting *Jones*, 930 F.3d at 380). In other words, the issue is whether the Confrontation Clause error was "harmless beyond a reasonable doubt." *Hamann*, 33 F.4th at 379.

Once the defendant shows a Confrontation Clause violation, the government must show that there "was no reasonable possibility that the evidence complained of might have contributed to the conviction." *Hamann*, 33 F.3d at 771 (quoting *Alvarado-Valdez*, 521 F.3d at 341 (alteration adopted)); *see also Chapman*, 386 U.S. at 24. In deciding how harmful the evidence was, the Court looks to how it was used. "If the government relied on the violative testimony in its closing argument, we are more likely to conclude that the error was harmful." *Hamann*, 33 F.3d

15

at 771 (quoting *Alvarado-Valdez*, 521 F.3d at 341).[6] If, however, the government makes only "fleeting references" to it, there is less likelihood of harm. *United States v. Sarli*, 913 F.3d 491, 498 (5th Cir. 2019).

Here, at closing, the government relied on the Exhibit 4 audio recording, as well as on Koval's identification of Lopez in the audio recording, in connection with Count One:

> Remember, you heard audio clips of the interaction between the defendant, Mr. Lopez, and the informant ..... You heard that the informant had purchased methamphetamine from Mr. Lopez before and knew he could order methamphetamine again from Mr. Lopez.

> So on the audio clip of the phone call made to Mr. Lopez before the controlled purchase happened, you heard the informant order a two-piece chicken if he was cooking this morning. . . . You heard Mr. Lopez say that he was only going to give the informant an ounce and a half because of past due bills.

CR ECF No. 102 at 293–94. The government also used transcripts of the audio recording at closing. *Id.* at 295:16–25, 296:1–5. Clearly, the "evidence complained of might have contributed to the conviction." *Hamann*, 33 F.3d at 771. Therefore, the Court finds that Lopez has established a Confrontation Clause violation that was not harmless beyond a reasonable doubt at trial. As a result, trial counsel's performance fell below an objective standard of reasonableness in failing to object to the testimonial hearsay outlined above.

---

[6] The Fifth Circuit consistently has refused to find harmless error when the prosecutor emphasizes the inadmissible testimony during closing arguments. *See Alvarado-Valdez*, 521 F.3d at 342 (given "government's insistent reliance on the [challenged] testimony in its closing argument, ... we cannot say the [Confrontation Clause] error was harmless"); *Tirado-Tirado*, 563 F.3d at 126 (in light of government's "emphasis" in closing argument on tainted testimony, finding "reasonable possibility that [testimony] might have contributed to [the defendant's] conviction"); *Jackson*, 636 F.3d at 697 (government put "great importance" on tainted evidence "[i]n both its case in chief and its closing argument" and therefore cannot "conclusively show" evidence did not contribute to conviction); *Kizzee*, 877 F.3d at 662 ("The importance of [challenged] testimony to the prosecution's case can be underscored if it is referenced in closing statements.").

16

### 5.    The *Strickland* prejudice prong.

Because this is a Section 2255 ineffective assistance of counsel claim for failure to object based on the Confrontation Clause, rather than an error asserted on direct appeal for violation of the Confrontation Clause, a finding of error does not end the matter. Instead, to succeed on his Section 2255 claim, Lopez also must meet the second prong of *Strickland* and show that he was prejudiced by the violation. *See Dorsey*, 720 F.3d at 318–21; *see also Fontenot v. Quarterman*, No. 07-3426, 2008 WL 905154, at *9 (S.D. Tex. Apr. 2, 2008). To prove prejudice, Lopez must show the likelihood of a different result had the violation not occurred. *Strickland*, 466 U.S. at 667. The likelihood of a different result "must be substantial, not just conceivable," *Harrington*,    562 U.S. at 112, and the movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 686).

The Court finds no prejudice due to the Confrontation Clause violations because there is no substantial likelihood of a different result absent use of the above-referenced statements. Without evidence that (1) the confidential informant "volunteered to conduct controlled purchases of methamphetamine from Lopez," (2) the informant had "purchased methamphetamine from Lopez before," and (3) Lopez had agreed by phone that the informant could come to his house and purchase a "two-piece chicken," the government provided ample evidence of Lopez's possession and distribution of methamphetamine. For example, agents executed search warrants that uncovered guns, methamphetamine and drug paraphernalia customarily used in distribution. *See, e.g.*, CR ECF No. 102 at 82–93; Exhibits 20–51. Further, even without the testimony that officers "had received information from an informant that Mr. Lopez was bringing back a quantity of methamphetamine," the government provided evidence of Lopez's confession after his arrest

17

that he knew his car contained methamphetamine in the tire, and that methamphetamine was, in fact, found in the spare tire. *See* CR ECF No. 102 at 255:7–19; Exhibit 104.

Regarding Koval's identification of Lopez's voice on Exhibit 4, DEA task force member Jeremy Hoffman's testimony corroborated that the number called by the informant belonged to Lopez, because Lopez gave him that number when Hoffman asked Lopez for his cell phone number. *Id.* at 251:3–16. Further, given that numerous audio clips of Lopez (other than Exhibit 4) were played for the jury, jurors could have used their own independent judgment to determine that Lopez was the person called by the informant to set up the "two-piece chicken" buy. *See, e.g.,* CR Exhibit 104. Lopez has not shown the likelihood of a different result had the Confrontation Clause violations not occurred. *Strickland*, 466 U.S. at 667. Therefore, Lopez fails to show prejudice under *Strickland*, and his claim that his conviction should be vacated due to Confrontation Clause violations fails.

**D.    Failure to exclude audio recordings and transcripts.**

      **1.    Lopez's recorded statements.**

Lopez alleges that counsel was ineffective in failing to object on Confrontation Clause grounds to the admissibility of the audio recordings used by the government and the transcripts thereof. ECF No. 2-1 at 22–25. This contention is without merit. First, Lopez's own statements on the audio recordings are not hearsay. "A statement is not hearsay if it is offered against a party and is the party's own statement." *United States v. Chaney*, 299 Fed. App'x 447, 452 (5th Cir. 2008) (citing FED. R. EVID. 801(d)(2) and *United States v. Thompson*, 130 F.3d 676, 683 (5th Cir. 1997) ("Hearsay problems are not a concern if the jury believes that the defendant was one of the participants in the conversation; any statements he made would be admissible as a statement of a party opponent.")). Lopez's counsel was not ineffective in failing to object to admission of Lopez's

18

recorded statements on Confrontation Clause grounds. "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

### 2. Koval's testimony as to the recorded statements.

. Koval's testimony regarding the conversations that transpired between Lopez and the confidential informant did not violate the Confrontation Clause. *See* CR ECF No. 102 at 52–54, 58–68. Koval testified as to Lopez's statements, which he heard at the time they were made and, as stated, are not hearsay. The few references by Koval to statements made by the confidential informant were limited and were solely used to place Lopez's statements into context. *See, e.g., id.* at 53:3–6; 64:18–24; 65:22–23. They were not testimonial in nature under the standards set forth above, and thus do not violate the Confrontation Clause.

### 3. The confidential informant's recorded statements.

The confidential informant made no testimonial statements on the audio recordings, nor were his statements admitted for the truth of the matter asserted. *See* CR ECF No. 112 at Exhibit Nos. 5, 7–10, 12. An informant's statements are not hearsay and may be admissible when they are "part of a reciprocal and integrated conversation" with the defendant. *Chaney*, 299 Fed. App'x at 452. Again, trial counsel is not required to bring meritless objections. *See Kimler*, 167 F.3d at 893. Further, even if the informant's statements on the audio recordings were testimonial, Lopez has not shown that he was prejudiced by their admittance under *Strickland*.

### 4. Admissibility of transcripts.

Use of transcripts did not violate the Confrontation Clause. The jury was provided a limiting instruction stating that the transcripts were admitted solely to aid jurors in following the

19

content of the audio recordings and identifying the speakers on the recordings. The instruction further stated that the transcripts themselves were not evidence, and that the audio recordings, not the transcripts, were evidence in this matter. *See* CR ECF No. 102 at 331:4–25; 332:1; *United States v. Patino–Prado*, 533 F.3d 304, 313 (5th Cir. 2008) (per curiam) ("We will presume that jurors understand and follow their instructions, abandoning that presumption only when there 'is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating.'") (quoting *United States v. Barksdale–Contreras*, 972 F.2d 111, 116 (5th Cir.1992)). Lopez has not shown that the jury failed to follow the instructions given. Again, Lopez's counsel was not ineffective for failing to make meritless objections. Further, Lopez has not showed that admittance of the transcripts prejudiced him under *Strickland*. His argument on this issue is without merit.

### E.      Failure to contest allegedly perjured testimony.

Lopez alleges that counsel was ineffective by failing to challenge alleged prosecutorial misconduct that occurred when the government used purportedly perjured testimony from Koval. ECF No. 2-1 at 25–28. Specifically, Lopez claims that the government knowingly used Koval's allegedly false identification of Lopez in a video of the October 21, 2020, drug purchase transaction at Lopez's home. *Id.* at 12, 25–26. The video was not admitted into evidence; however, Koval testified on voir dire that he identified Lopez on an audio recording (which was admitted as Exhibit 6) because he saw Lopez on the video that corresponded to the audio. CR ECF No. 102 at 49:14–17. Lopez contends that Koval's testimony was false because, Lopez claims, he was not present at his house when the video was recorded. ECF No. 2-1 at 26–27.

The Due Process Clause of the Fourteenth Amendment prohibits the government from knowingly using perjured testimony or allowing perjured testimony to go uncorrected. *Beltran v.*

20

*Cockrell*, 294 F.3d 730, 735 (5th Cir. 2002) (citing *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000)). To obtain habeas relief on false testimony grounds, a movant must prove that: "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Id.* (citing *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997)); *see also Napue v. Illinois*, 360 U.S. 264 (1959). The deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice and violates due process. *See Giglio v. United States*, 405 U.S. 150, 153 (1972) (citing *Mooney v. Hologan*, 294 U.S. 103 (1935)); *Napue*, 360 U.S. at 269 (applying *Mooney* to testimony that bore upon a witness's credibility).

Assuming for the purposes of the Motion that Koval's identification of Lopez in the unadmitted video was material, Lopez fails to provide evidence of the remaining two elements. Although Lopez argues in the Motion that he was not in the house at the time the video was shot, he provides no evidence to support his claim. For instance, he does not allege in his declaration that Koval's identification was false, nor does he provide evidence of his whereabouts when the video was shot. *See* ECF No. 2-2 at 3–8. Further, Lopez merely alleges, again without factual support or evidence, that the prosecution knew the evidence was false. "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) (internal quotation and citation omitted) (declining to consider vague ineffective assistance of counsel claim); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Lopez has pointed to no evidence in the record that (1) Koval's identification of Lopez's voice was false; or (2) that the prosecution knew Koval's testimony was false. Therefore, Lopez's

21

argument fails the first prong of the *Strickland* test.

Further, as Lopez admits in the Motion, his counsel argued during closing that "there's no picture of my client, Jeffrey" in the video. CR ECF No. 102 at 312. During closing arguments, Lopez's counsel repeatedly questioned the identification of Lopez by Koval, questioned the government's decision to not submit the video into evidence, and attempted to cast doubt on Koval's credibility. *Id.* at 312–315. It was the jury's sole province to determine if it believed Koval's testimony and the weight to be accorded to his testimony. *See United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998) ("[I]t is the sole province of the jury . . . to evaluate the credibility of witnesses."). This issue is without merit.

**F.    Failure to impeach testimony.**

Lopez next argues that counsel was ineffective for failing to impeach Koval's testimony as to Koval's whereabouts during the confidential informant's drug buy at Lopez's house on October 21, 2020, and for failing to independently investigate Koval's whereabouts. ECF No. 2-1 at 28–34. He provides a list of trial transcript excerpts purporting to show that Koval's testimony was inconsistent and should have been challenged by counsel.

After review of Lopez's transcript excerpts, the Court finds that counsel was not ineffective in failing to challenge Koval's testimony on the grounds alleged by Lopez. There is no conflict in Koval's testimony as to his whereabouts during the drug buy; Koval testified, without contradiction, that his observations were based on real-time video surveillance rather than personal observation. He also testified that he was "in the area, but never visited the house." CR ECF No. 102 at 45:23–25; 46:1–15; 56:18–25; 57:1–3, 24–25; 58:1–2.

Counsel cross-examined Koval about the transaction in question, and the number of people in the house at the time. *See id.* at 94–96. Whether and how to cross-examine a particular witness

22

is a question of trial strategy that enjoys a strong presumption of effectiveness. *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1100 (2012). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Furthermore, the jury heard both the direct examination and the cross-examination but still found Lopez guilty. Lopez fails to show that counsel's decision to not challenge Koval's testimony about his whereabouts or the other issues outlined by Lopez in the Motion was deficient. Further, Lopez fails to show that "a different cross-examination would have created a reasonable probability of a different outcome." *Castillo v. Stephens*, 640 Fed. App'x 283, 292 (5th Cir.), *cert. denied*, 580 U.S. 833 (2016). Speculation concerning the possible effect of using a different cross-examination technique or impeachment strategy is the type of hindsight about which *Strickland* cautions. *Strickland*, 466 U.S. at 689. Lopez has neither shown that counsel was deficient nor that he was prejudiced by counsel's alleged failures to cross-examine in the manner Lopez alleged. This claim lacks merit.

## G. Opening the door to hearsay evidence.

Lopez alleges that counsel was ineffective for opening the door to the introduction of allegedly inadmissible hearsay evidence during his voir dire and cross-examination of Koval. ECF No. 2-1 at 35–36. Lopez does not specify, however, the evidence that his attorney inadvertently introduced or on what grounds such evidence was purportedly inadmissible. He also fails to explain how the outcome of the case would have changed if the unspecified evidence had not been introduced. Lopez's claim is wholly conclusory and thus does not raise a constitutional issue meriting relief. *See Miller*, 200 F.3d at 282 ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue.").

23

**H.    Failure to investigate grounds to suppress text-message evidence.**

Lopez next claims that counsel was ineffective in failing to investigate grounds to suppress text messages that were entered into evidence. ECF No. 2-1 at 45–51. The text messages were found during a Cellbrite forensic download of the cell phones found in Lopez's car after his arrest on November 13, 2020. After admitting the text messages, the Court provided a limiting instruction to the jury that it could only consider the messages as proof of Lopez's state of mind or intent, but not as proof of other bad acts, pursuant to FED. R. EVID. 404(b). CR ECF No. 102 at 200–10.

Following cross-examination of the sponsoring witness, Lopez's counsel made an untimely motion to suppress the text messages, alleging that they were obtained without either a warrant or Lopez's permission. The Court held a good-cause hearing, after which it denied the motion, finding that (1) the government had provided adequate notice to Lopez of its intent to use the text messages; and (2) the government offered the messages to prove Lopez's intent to distribute methamphetamine, not as impermissible evidence to show action in conformity with character. *See* FED. R. EVID. 404(b); *United States v. Lugo-Lopez*, 833 F.3d 453, 460–61 (5th Cir. 2016); CR ECF No. 102 at 219–223; 230–242. The Court denied a motion for reconsideration on the same grounds. CR ECF No. 75.

Assuming for the purposes of the Motion that counsel was ineffective in failing to timely object to use of the messages, Lopez cannot show that he was prejudiced by the error. The messages were introduced solely to show Lopez's intent to distribute the methamphetamine found in his car at the time of his arrest, and the jury was so instructed. CR ECF No. 102 at 196–200. As noted, the jury is presumed to have followed its instructions in its deliberations. *See United States v. Cessa*, 785 F.3d 165, 183 (5th Cir. 2015) (citing *Zafiro v. United States*, 506 U.S. 534, 540 (1993)). Lopez has not shown that the jury failed to follow the limiting instruction.

24

Even if the Court had excluded the text messages, the outcome of the proceedings would not have changed because there was other evidence indicating Lopez's intent to distribute the methamphetamine. *See United States v. Vasquez*, 899 F.3d 363, 373 (5th Cir. 2018), *as revised* (Aug. 24, 2018) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). During trial, the government presented substantial additional evidence of Lopez's intent to distribute the methamphetamine he possessed on November 13, 2020, including testimony by DEA Task Force Officer Randy Mincher that the quantity of methamphetamine in Lopez's vehicle was consistent with distribution, not personal use. CR ECF No. 102 at 192:16–20. *See United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995) (citations omitted) (The Fifth Circuit has found it "well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony often is helpful in assisting the trier of fact understand the evidence"). In addition, DEA Task Force Officer Jeremy Hoffman testified that Lopez confessed to possessing the methamphetamine and also had $3,821.00 in cash in his wallet at the time of his arrest, despite being unemployed since January 2020. CR ECF No. 102 at 254:12–16. *See United States v. Penny*, 60 F.3d 1257, 1263 (7th Cir. 1995) ("Evidence of unexplained wealth is probative and therefore admissible if it 'creates a reasonable inference of the defendant's involvement in the drug conspiracy or trafficking.'") (quoting *United States v. Davis*, 789 F. Supp. 1130, 1132 (D. Kan. 1992)). Accordingly, any error by counsel in not timely objecting to admission of the text messages did not prejudice Lopez because the government provided other significant evidence that Lopez intended to distribute the methamphetamine. Lopez is not entitled to relief on this basis.

**I.      Ineffective appellate counsel.**

Lopez argues that his appellate counsel was ineffective for failing to raise the claims outlined above. To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348. Thus, it is possible that an ineffective assistance claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To demonstrate that a failure to raise an issue was deficient, a movant must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. *Id.*

Assuming for the purposes of the Motion that Lopez's appellate counsel was ineffective for not raising the Confrontation Clause issue discussed above, Lopez still must demonstrate "there is a reasonable probability that, but for [appellate] counsel's unprofessional error[], the result of the proceeding would have been different" before he is entitled to habeas relief. *Jones*, 163 F.3d at 302 (quoting *Washington*, 466 U.S. at 694). A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome. *See id.*; *Green*, 160

26

F.3d at 1043 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Because trial counsel did not challenge the improper evidence at trial, the appellate court would have reviewed for plain error had appellate counsel raised the issue on direct appeal. A trial court plainly errs when it commits (1) an error (2) that is plain, *i.e.*, clear and obvious, (3) that affects the defendant's substantial rights; even then, the appellate court would exercise its discretion to correct the error only if leaving it uncorrected seriously would affect the fairness, integrity, or public reputation of the judicial proceedings. *See Olano*, 507 U.S. at 731–36; *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *abrogated on other grounds* by *Johnson v. United States*, 520 U.S. 461 (1997).

Had appellate counsel raised the issue for the first time on appeal, it would not have survived plain error review such that Lopez's conviction would have been overturned. While there arguably was plain and obvious error, it did not affect Lopez's substantial rights, nor did it affect the "fairness, integrity or public reputation" of the judicial proceedings. As discussed *supra*, there was ample evidence of Lopez's guilt separate and apart from the violative statements.

Consequently, because raising the Confrontation Clause issue would not have changed the outcome of Lopez's direct appeal, appellate counsel's failure to raise it did not affect Lopez's substantial rights for the purposes of habeas review. Prejudice results only when appellate counsel fails to raise a claim or issue on appeal and it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and that "the attorney's deficient performance led to a fundamentally unfair and unreliable" outcome. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). Lopez has not shown that appellate counsel's failure to raise any of the issues of which he complains prejudiced his rights or caused a "fundamentally unfair and unreliable" outcome under the *Strickland* paradigm. As

such, his claim of ineffective assistance of appellate counsel must be denied.

**J.    Cumulative error doctrine.**

Finally, Lopez maintains that the combination of errors in his trial requires habeas relief. This argument implicates the cumulative error doctrine, which provides that "an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998).

However, Lopez arguably established only one error in the conduct of his trial, which, as discussed above, did not prejudice him. Therefore, relief is not available under the cumulative error doctrine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (finding no cumulative error where defendant failed to identify single error in jury selection); *Miller*, 200 F.3d at 286 (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

For the reasons stated above, Petitioner's Motion to Vacate is **DENIED** with prejudice.

**SO ORDERED**.

November 4, 2024.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE